IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2026

## JACQUET MOORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 14-05951      Carlyn L. Addison, Judge

———————————————

### No. W2025-01180-CCA-R3-PC

———————————————

The Petitioner, Jacquet Moore, appeals from the denial of his petition for post-conviction relief from his underlying conviction for aggravated rape. On appeal, the Petitioner maintains that he received ineffective assistance of counsel based on trial counsel's failure to (1) perform adequate investigation in preparation for trial, including seeking funds for investigative services, and (2) effectively impeach the victim on cross-examination. As a preliminary matter, we remanded the case to the post-conviction court for the entry of an amended order to include sufficient findings of fact and conclusions of law on these two issues. After our review of the amended order, as well as the issues presented by the parties and the record on appeal, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Claiborne H. Ferguson and John P. McNeil, Memphis, Tennessee, for the appellant, Jacquet Moore.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Nicole Germain and Monica Timmerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I.  FACTUAL AND PROCEDURAL HISTORY

### A.  Trial Proceedings and Direct Appeal

In November 2014, a Shelby County grand jury indicted the Petitioner for aggravated rape regarding an incident that was alleged to have occurred in 2000.  *See State v. Moore*, No. W2017-02058-CCA-R3-CD, 2019 WL 267844, at \*1 (Tenn. Crim. App. Jan. 18, 2019), *perm. app. denied* (Tenn. May 17, 2019).  In December 2016, the Petitioner proceeded to a trial by jury.  *Id.*

On the day of trial, the State filed a motion *in limine* pursuant to Tennessee Rule of Evidence 412 to prohibit references to any alleged sexual behavior on the part of the victim with anyone other than the Petitioner.  *Id.*  Therein, the State noted that the Petitioner had failed to file a written motion ten days prior to trial indicating his intent to use evidence of the victim's sexual behavior as required by Rule 412.  *Id.*  The trial court granted this motion, noting that the defense had failed to file the appropriate paperwork under Rule 412 relative to any instances of the victim's prior sexual behavior, and stating that the defense could not "backdoor a [Rule] 412 and raise that issue by the backdoor."  *Id.* at \*1, \*5-6.  Separately, the State filed a motion *in limine* to prohibit the defense from questioning the victim about her engaging in prostitution at the time of the offense absent a good-faith basis and from questioning witnesses on whether the location of the crime was known for "prostitution, high crime, or drug activity."  *Id.* at \*1.  The trial court granted this second motion as well, first noting the defense's claim of consensual sex and then stating that to suggest to the jury that the victim was engaged in prostitution without a good-faith basis was "totally improper."  *Id.* at \*1, \*5.

At trial, the victim testified that while walking home from a nightclub in the early morning hours of January 23, 2000, the Petitioner pulled up beside her in a small, beige four-door "car" and offered her ride, which she declined.  *Id.* at \*1.  The Petitioner continued to ask the victim to get inside his vehicle, and the victim continued to refuse.  *Id.*  The Petitioner then stopped the vehicle, exited, and threatened to kill the victim if she did not get inside the vehicle.  *Id.*  Scared, the victim complied, and when she got inside the vehicle, she saw a gun in the center console.  *Id.*  The Petitioner drove to a secluded parking lot, vaginally raped the victim, and dropped her off near her apartment.  *Id.* at \*1-2.

The victim reported the incident to law enforcement, and she was transported to the Rape Crisis Center where a rape kit test was collected.  *Id.* at \*2-3.  From the Petitioner's

DNA profile, he was determined to be "the major contributor" of the sperm sample developed from the victim's vaginal swab. *Id.* at *3. In February 2014, law enforcement presented the victim with a photographic lineup, from which she made a "tentative" identification of the Petitioner as her assailant. Although she was less than certain in her identification of the Petitioner, the victim told law enforcement that the photograph depicted "the face of the man who raped [her]." *Id.* The victim noted under the Petitioner's photograph, "This looks like the guy because of his fat face. I remember that he had a heavy body." *Id.* at *2.

After the victim's testimony, trial counsel moved the trial court to be allowed to cross-examine the State's DNA expert about the presence of an unidentified individual's DNA profile found on the victim's vaginal swab. *Id.* The State objected, arguing that this line of questioning violated the protections in place for victims under Rule 412 and again noted that the Petitioner had failed to comply with the procedural requirements of the rule. *Id.* The State explained that to imply the victim had sex with someone else, whether consensual or not, was covered by Rule 412 motion, but notice was not given pursuant to the rule. *Id.* Additionally, the State indicated that nothing in the report specified the unidentified DNA profile belonged to a male and that it did not intend on putting the report into evidence. *Id.* The trial court denied the Petitioner's motion, agreeing with the State's argument. *Id.*

Law enforcement interviewed the Petitioner, and after waving his rights, he denied knowing the victim. *Id.* at *3. After being shown a picture of the victim, the Petitioner said, "That doesn't look like anybody I would get with." *Id.* He also noted on the photo "I don't recognize" her. *Id.* The Petitioner elected not to testify at trial and offered no proof. *Id.* The Petitioner was convicted as charged and received a sentence of sixty years' incarceration at a one hundred percent service rate. *Id.*

The Petitioner appealed his conviction, specifically challenging the sufficiency of the convicting evidence and the trial court's evidentiary rulings prohibiting him from eliciting testimony regarding the location of the crime being "known for prostitution" and from cross-examining the State's DNA expert about an unidentified individual's DNA found on the victim's vaginal swab. *Id.* at *4-5. A panel of this court concluded that there was sufficient evidence to support the Petitioner's conviction for aggravated rape. *Id.* at *5. As to the trial court's evidentiary determinations regarding the area of the crime being known for prostitution, the panel noted its agreement with the trial court that any implication without a good-faith basis the victim was engaged in prostitution was improper and additionally noted that such was irrelevant to the issue of whether the Petitioner committed the aggravated rape. *Id.* The panel reasoned that the victim's behavior did not

refute in any way her identification of the Petitioner as the perpetrator or the finding of the Petitioner's DNA on the victim's vaginal swab. *Id.* As to the trial court's prohibiting the Petitioner's questioning of the State's DNA expert about a minor, unknown DNA profile found on the victim's vaginal swab, this court held such was also irrelevant for the same reasons and again noted that the presence of such a profile had no bearing on whether the victim had consented to sexual intercourse with the Petitioner. *Id.* The panel additionally observed that because the Petitioner was charged with aggravated rape, Rule 412 applied to his trial, and as such, to discuss specific instances of the victim's sexual behavior, which included evidence of an unidentified individual's DNA found on her vaginal swab, the Petitioner was required to follow the procedure outlined in Rule 412. *Id.* at *6. As he had failed to do so, the trial court correctly prohibited the questioning of the State's DNA expert in this regard. *Id.* Accordingly, the Petitioner's conviction for aggravated rape was affirmed. *Id.*

## B.    Post-Conviction Proceedings

On July 9, 2019, following the Tennessee Supreme Court's denial of his application to appeal this court's decision affirming his conviction, the Petitioner filed a timely petition for post-conviction relief. Upon the appointment of counsel, an amended petition was filed wherein the Petitioner alleged that trial counsel had been ineffective for failing to file a Rule 412 motion, thereby preventing him from developing a "third party guilt defense" and from meaningfully cross-examining the victim. He noted that "the victim's story changed over time[,]" which "provided fertile grounds for impeachment." He additionally alleged that trial counsel was ineffective for failing to adequately investigate the case and seek funding for investigative services.

Thereafter, on July 23, 2024, the post-conviction court entered an order summarily denying the Petitioner relief. The post-conviction court reasoned as follows:

> While not addressing counsel's failure to file the Rule 412 Motion specifically; (the Petitioner did not raise the issue of ineffective assistance of counsel on appeal) the Court of Criminal Appeals did find that "none of the evidence proffered was relevant to the [Petitioner's] trial". [The Petitioner] only argued that the trial court erred. His post[-]conviction claim, however has no merit. Even if his counsel had made an error by failing to file the 412 motion, the appellate court ruled that the 412 evidence proffered was properly excluded due to irrelevancy.

- 4 -

The Petitioner timely appealed the post-conviction court's decision. *See Moore v. State*, No. W2024-01146-CCA-R3-PC, 2025 WL 905614, at *1 (Tenn. Crim. App. Mar. 24, 2025), *no perm. app. filed*.

On March 24, 2025, this court affirmed in part and reversed in part the judgment of the post-conviction court. *Id.* The panel noted that the Petitioner's "primary contention in the amended petition" was trial counsel's failure to file a Rule 412 motion, which "prevented him from presenting a third-party defense that someone else raped the victim." *Id.* at *3. It agreed with the post-conviction court that the Rule 412 evidence the Petitioner sought to present was irrelevant to the issue of whether he raped the victim, and as such, the Petitioner failed to demonstrate prejudice in this regard even if trial counsel was deficient for failing to file a Rule 412 motion prior to trial. *Id.* Accordingly, it affirmed the post-conviction's judgment relative to this ground. *Id.* The panel, however, noted that the post-conviction court's order did not address the Petitioner's two additional grounds for ineffective assistance of counsel, those being that trial counsel failed (1) "to cross-examine the victim effectively because her story 'changed over time and this provided fertile grounds for impeachment[,]'" and (2) to investigate so as to be adequately prepared for trial and to present an effective defense and cross-examination of the witnesses. *Id.* at *4. The panel, thus, remanded the case to the post-conviction court with instructions to conduct an evidentiary hearing to address these remaining grounds. *Id.*

The post-conviction court held an evidentiary hearing on July 18, 2025. The Petitioner was the only witness to testify at the hearing, and no other proof was submitted by either party. The Petitioner asserted generally there were "a lot of things [trial counsel] could have had done" that, in his opinion, would have made the outcome "better than this." Much of the Petitioner's testimony focused on the facts that the area where the crime occurred was known for prostitution and that multiple DNA profiles were found on the victim's vaginal swab.

When asked to provide specifics about trial counsel's alleged ineffectiveness, the Petitioner asserted that trial counsel should have filed a Rule 412 motion, which would have allowed an effective cross-examination of the victim to include the presence of the other DNA profile found in her vaginal sample to show that he was "not the rapist." Regarding the alleged inconsistencies in the victim's story, the Petitioner testified that the timing and locality of the offense, as well as the type of vehicle the victim's assailant had been driving, should have been exposed on cross-examination by trial counsel to cast doubt on the victim's less-than-certain identification of him as the perpetrator of the rape. According to the Petitioner, the victim had said her assailant was driving a van or small car, but he drove a truck. The Petitioner further testified that hiring an investigator for his

defense "would have helped out a whole lot" in that the investigator could have "went to the area" and found out "about the club," "talked to the . . .club," and discovered that it was an area of "high prostitution."

However, the Petitioner agreed that his defense at trial was that his sexual encounter with the victim, which was supported by the presence of his DNA inside the victim's vaginal cavity, had been consensual in nature. As such, he affirmed that regardless of what vehicle he was driving, whether trial counsel had hired an investigator to go to "the club," whether other DNA was present in the victim's vaginal sample, or whether the area was one known for prostitution, he was present at the location and had sex with the victim. Additionally, the Petitioner confirmed that his issues regarding the high prostitution nature of the area and the presence of multiple DNA profiles in the victim's vaginal swab had already been litigated on appeal, and this court had determined that those matters were irrelevant to the issue of whether he had raped the victim given the defense.

On August 20, 2025, the post-conviction court entered an amended order[1] denying the petition. The post-conviction court first recited this court's disposition of the Petitioner's Rule 412 argument in the first post-conviction appeal. *See Moore*, 2025 WL 905614, at *3. Particularly, the post-conviction court noted this court's holding that the Rule 412 evidence the Petitioner sought to present—the unidentified DNA profile found on the victim's vaginal swab—was irrelevant to the issue of whether he raped the victim, and as such, the Petitioner failed to demonstrate prejudice in this regard even if trial counsel were deficient for failing to file a Rule 412 motion pretrial. *See id.* After reciting this holding, the post-conviction court determined that regardless of whether the area was known for prostitution, such was irrelevant to this issue of whether the Petitioner raped the victim, and therefore, this argument failed "for the same reasons." The post-conviction court concluded the order by stating, "All other claims that have also been raised were considered and dismissed on the merits." The Petitioner filed a timely notice of appeal.

On appeal, the Petitioner initially urged us to remand the case for a new hearing or otherwise reverse the judgment of the post-conviction court because the post-conviction court failed to address the two specific grounds originally identified by this court on remand in its order denying relief: (1) The Petitioner alleged "that trial counsel failed to cross-examine the victim effectively because her story 'changed over time and this provided fertile grounds for impeachment.'"; and (2) The Petitioner alleged "that '[t]he lack of investigative work led to the failure of the trial attorneys to be properly prepared and fully aware of the facts as they would be presented at trial and . . . for an effective defense or cross-examination to the testimony." *See id. at *4.* In response, the State

---

[1] The post-conviction court's original hand-written order was filed on August 4, 2023.

asserted that the post-conviction court's order sufficiently addressed these two issues but that a limited remand to the post-conviction court to address any omissions in a new order would provide an adequate record for our review, rather than mandating reversal or remand for a new evidentiary hearing. Having agreed with the State regarding the propriety of a limited remand, on March 9, 2026, this court ordered a limited remand "for the post-conviction court to file a written order setting forth findings of fact and conclusions of law [regarding the above mentioned] two specific grounds alleged by the Petitioner in support of his petition for post-conviction relief" as described in the initial remand order.

The post-conviction court subsequently filed an amended order, including findings of facts and conclusions of law. Therein, the post-conviction court first noted the two issues for its consideration on remand, and it then reiterated what the Petitioner had testified to at the hearing regarding both of these grounds. The post-conviction court found that while the Petitioner wanted trial counsel to introduce evidence at trial that the area where the crime occurred was known for prostitution and the presence of another's DNA was discovered on the victim's vaginal swab, such evidence had "no bearing" on whether the victim was raped by the Petitioner. As to the evidence that the Petitioner drove a truck rather than a van or small car, the post-conviction court found that the Petitioner "openly admitted to driving in that area on the night in question." Therefore, trial counsel made a strategic decision to not introduce this evidence because it would not have "altered the jury's ultimate finding of guilt for [a]ggravated [r]ape." The post-conviction court, citing *Black v. State*, noted that when a petitioner contended that trial counsel failed to discover, interview, or present witnesses, those witnesses should be presented by the petitioner at the evidentiary hearing. *See* 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In the absence of such, the post-conviction court could not "speculate on what benefit the witnesses might have offered" or "guess as to what evidence further investigation may have uncovered." It concluded that even if trial counsel's performance was deficient, the Petitioner failed to carry his burden that such deficiency prejudiced his case.

The case is now before us for review.

## II.    ANALYSIS

The Petitioner contends that the post-conviction court erred by denying relief on the Petitioner's claims that trial counsel was ineffective for failing (1) to adequately investigate the case, including seeking funds for investigative services, and (2) to effectively impeach the victim on cross-examination. He further asserts that "[t]hese are significant issues which could have and likely would have swayed the jury in favor [of the Petitioner]." The

State responds that the Petitioner failed to prove his factual allegations at the evidentiary hearing and did not establish prejudice.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); *see also Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective

merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that[,] but for counsel's errors[,] the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## A.  Failure to Investigate

The Petitioner argues that the post-conviction court erred in denying relief because the evidence at the hearing established that trial counsel was ineffective by failing to adequately investigate the case or seek funds for investigative services, which in turn led to trial counsel's failure to be "properly prepared and fully aware of the facts as they would be presented at trial and for an effective defense or cross-examination to the testimony." He contends that an investigator could have developed third parties as alternative assailants. He further asserts that trial counsel also failed to interview witnesses to establish "an alibi or a meaningful third-party defense." The State responds that the Petitioner "presented no evidence or testimony of these alleged witnesses," thereby failing to prove prejudice.

A petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *See Owens v. State*, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999). Moreover, as observed by the post-conviction court, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black*, 794 S.W.2d at 757. A petitioner is not entitled to relief unless the material witness is introduced and proffers favorable testimony in support of the petitioner's defense. *Id*. at 758. Generally, this is the only way to establish that trial counsel's failure resulted in the denial of critical evidence, prejudicing the petitioner. *Id*. at 757. "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further

investigation would have revealed a material witness or what a witness's testimony might have been if introduced by [trial] counsel." *Id*.

In the case at bar, the Petitioner offered only his bare assertion that additional investigation, including the services of a hired investigator, "would have helped out a whole lot." However, the Petitioner did not demonstrate what further investigation would have revealed in that he presented no witnesses or other evidence that could have established a third-party defense to this crime. "For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." *Owens*, 13 S.W.3d at 756. Put another way, the Petitioner cannot prove that he was prejudiced by the alleged lack of investigation without putting on clear and convincing proof that such an investigation would have resulted in information favorable to the Petitioner's case. *See id.*; *see also Black*, 794 S.W.2d at 757-58; Tenn. Code Ann. § 40-30-110(f). "Without such proof, we can only speculate as to any prejudicial effect on the Petitioner's defense." *Driver v. State*, No. M2024-01247-CCA-R3-PC, 2025 WL 2427090, at *11 (Tenn. Crim. App. Aug. 22, 2025), *perm. app. denied* (Tenn. Jan. 15, 2026). The post-conviction court properly observed that it could not speculate on what potential witnesses would have testified to.

As such, we agree with the post-conviction court that the Petitioner failed to prove he was prejudiced in this regard. He is not entitled to relief on this claim.

### B.      Failure to Properly Cross-Examine the Victim

The Petitioner contends that more meaningful cross-examination of the victim could have been conducted had counsel filed a Rule 412 motion before trial. Specifically, the Petitioner argues that trial counsel should have been prepared to ask the victim about the other DNA profile found on the victim's vaginal swab, as well as about the location of the crime being known as an area for high prostitution. He also submits that trial counsel should have, through cross-examination of the victim, exposed inconsistencies in her account of the crime. All of which, according to the Petitioner, could have raised the issue of misidentification of the Petitioner at trial. The State responds that the Petitioner failed to put on proof to support this allegation and that the post-conviction court properly denied relief.

As noted in the prior section, allegations regarding trial counsel's failure to take certain actions must be supported by clear and convincing evidence of the favorable outcome alleged to have been the result if such actions were taken. *See Black*, 794 S.W.2d at 757-58; *see also Owens*, 13 S.W.3d at 756; Tenn. Code Ann. § 40-30-110(f).

Specifically, "[a] petitioner alleging the ineffective assistance of counsel based on cross-examination decisions must show 'what additional beneficial evidence could have been elicited' through additional cross-examination and must present that witness at the evidentiary hearing to demonstrate how that witness would have responded." *Weatherly v. State*, No. W2025-00489-CCA-R3-PC, 2025 WL 3158673, at *8 (Tenn. Crim. App. Nov. 12, 2025) (quoting *Ortiz v. State*, No. M2020-01642-CCA-R3-PC, 2021 WL 5080514, at *4 (Tenn. Crim. App. Nov. 2, 2021)), *perm. app. denied* (Tenn. Apr. 27, 2026).

In this case, the only proof introduced at the post-conviction hearing regarding alleged inconsistencies in the victim' testimony was the Petitioner's speculative belief that the outcome of his case would have been "better" if trial counsel had tailored his cross-examination to expose these details. When asked at the hearing about these inconsistencies, the Petitioner mentioned the timing and locality of the offense and the type of vehicle the victim's had said her assailant was driving. Consequently, the Petitioner has not shown what favorable evidence, if any, would have been elicited from the victim if she had been cross-examined differently. *See Ortiz*, 2021 WL 5080514, at *4. This court, under similar circumstances, has previously concluded that such a lack of proof is insufficient to support a finding that trial counsel was ineffective. *See, e.g.*, *Britt v. State*, No. W2016-00928-CCA-R3-PC, 2017 WL 1508186, at *7 (Tenn. Crim. App. Apr. 25, 2017) ("Absent such testimony, any assumption about what [the witness] would have said at trial is speculative at best." (citing *Black*, 794 S.W.2d at 757)).

Also at the post-conviction hearing, the Petitioner, when asked about potential cross-examination of the victim, generally referenced the area being known for prostitution and the multiple DNA profiles found on the victim's vaginal swab. However, he acknowledged this court's prior ruling involving these matters and that such issues were not relevant. *See Moore*, 2019 WL 267844, at *5-6; *Moore*, 2025 WL 905614, at *3.

As the post-conviction court reiterated, the high prostitution nature of the area and the unidentified DNA on the victim's vaginal swab had "no bearing" to the issue of whether the victim was raped by the Petitioner, and regardless of the vehicle the Petitioner drove, he "openly admitted" to driving in the area the night of the crime. Additionally, the Petitioner's chosen defense at trial was that his sexual encounter with the victim, which was supported by the presence of his DNA in her vaginal cavity, had been consensual—irrespective of any purported inconsistencies about collateral details.

The record supports the post-conviction court's determination that the Petitioner failed to demonstrate that he was prejudiced in this regard. The Petitioner is not entitled to relief on this claim.

### III.  CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the post-conviction court.

s/Kyle A. Hixson
KYLE A. HIXSON, JUDGE